UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JEFF LUBLIN, et al.,

        Plaintiffs,

     v.

YARTO INTERNATIONAL GROUP, L.P., et al.,

        Defendants.

No. CV-07-3007-FVS

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** came before the Court based upon the plaintiffs' motion for partial summary judgment. They were represented by Donald A. Boyd and James S. Berg. The defendants were represented by Dennis M. Holmgren and C. Gregory Shamoun.

**BACKGROUND**

Javier Munguia and Jeff Lublin formed Washington Export, LLC ("WashEx"), as a limited liability company under the law of the State of Washington law, presumably chapter 25.15 RCW. As of September of 2005, Messrs. Munguia and Lublin were WashEx's only "members." *Cf.* RCW 25.15.005(8) (the term "'[m]ember' means a person who has been admitted to a limited liability company as a member as provided in RCW 25.15.115 . . .").

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

WashEx was in the business of purchasing perishable agricultural commodities from suppliers and selling them to buyers. One of the companies with whom WashEx did business was Yarto International Trading Company ("YITC"). It is not entirely clear what their relationship was as of September of 2005. According to the plaintiffs, WashEx obtained financing from YITC in order to expedite payment to its suppliers. According to the defendants, YITC purchased commodities from suppliers and sold them to WashEx.

During September of 2005, Messrs. Munguia and Lublin sold their membership interests in WashEx to Yarto International Group, L.P. ("YIG"), a limited partnership organized and existing under the law of the State of Texas. The terms of the sale were set forth in a contract that is entitled "Membership Interest Purchase Agreement." After selling their membership interests to YIG, they went to work for YITC managing WashEx's day-to-day operations. The terms of their employment with YITC were set forth in separate contracts, each of which is entitled "Key Employment Agreement."

WashEx continued to negotiate sales of perishable agricultural commodities. Typically, a supplier sold fruit to WashEx, who sold it to YITC, who sold it to the ultimate purchaser. The supplier sent an invoice to WashEx, who sent an invoice to YITC, who sent an invoice to the ultimate purchaser. Each of WashEx's invoices to YITC documented

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

the terms of the sale.  YITC was obligated to pay WashEx for the fruit within 30 days.  WashEx printed this term on each invoice in order to qualify for protection under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.*  Despite the deadline, YITC rarely paid WashEx within 30 days.  YITC asked WashEx to execute a written waiver of its PACA rights.  WashEx agreed.  The waiver was executed on or about December 12, 2005.  Mr. Lublin signed on behalf of WashEx.  Steve Winkler signed on behalf of YITC.

By the Summer of 2006, Messrs. Lublin and Munguia had become very frustrated with YITC.  In a letter dated July 31, 2006, they noted that YITC was WashEx's only source of money.  According to them, YITC was not paying WashEx quickly enough to enable WashEx to pay its suppliers prior to the 30-day deadline established by PACA.  They formally demanded that YITC "immediately pay all suppliers who are 30 days past due."  In addition, they demanded that YITC pay "all other suppliers" in a "timely" manner.  *Id.*

On August 11, 2006, Messrs. Munguia and Lublin formed U.S. Export Company, LLC ("USEx").  Approximately two weeks later, Mr. Winkler asked USEx to waive its PACA rights vis-a-vis YITC.  On August 25th, Mr. Lublin executed a written waiver of USEx's PACA rights.

During September of 2006, Steve Winkler and Robert Yarto traveled to Yakima, Washington.  They met with Mr. Munguia, Mr. Lublin, and

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

representatives of Evans Fruit Company, 11 R Sales, Inc., and Borton & Sons, Inc.  They allege that they were threatened with a lawsuit unless they acceded to a number of demands.  Negotiations followed.  During October of 2006, three contracts were executed.

One contract involved YIG, YITC, Mr. Munguia and Mr. Lublin.  It is entitled "Rescission of Membership Interest Purchase Agreement and Termination of Key Employee Agreements" (hereinafter "Rescission Agreement").  Its principal function was to return ownership of WashEx to Messrs. Lublin and Munguia and to sever their relationship with YITC.  Mr. Yarto signed for YIG and YITC.  He alleges that his signature was procured through a combination of fraud and coercion; the plaintiffs deny this allegation.

Another contract involved the parties to the Rescission Agreement plus Evans Fruit Company and Borton & Sons, Inc.  This second contract lacks a title, but the parties often refer to it as the "Settlement Agreement."  Its principal function was to determine the parties' financial obligations.  YITC allegedly accepted liability for some of WashEx's debts to its suppliers.  Some of the liability was certain; some was contingent upon the actions of other parties.

Between October 12, 2006, and December 31, 2006, both USEx and WashEx supplied perishable agricultural commodities to YITC.  Since October 2nd, YITC allegedly has paid approximately

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

$2,809,218.59 to WashEx and approximately $388,507.50 to USEx. According to YITC, these payments were more than enough to cover the invoices that WashEx and USEx submitted to YITC after October 12th. Instead of properly applying the payments toward the corresponding invoices, says YITC, WashEx improperly applied the payments toward its (YITC's) obligations under the Settlement Agreement. The plaintiffs deny this allegation.

On January 11, 2007, Mr. Lublin, Mr. Munguia, WashEx and USEx filed an action in Yakima County Superior Court against YIG, YITC, Mr. Yarto, and Mr. Winkler. The defendants removed the matter to federal court. 28 U.S.C. § 1446(a). Removal was proper for either of two reasons. To begin with, the plaintiffs seek relief under PACA. This creates federal-question jurisdiction. 7 U.S.C. § 499e(c)(5) ("district courts . . . are vested with jurisdiction specifically to entertain . . . actions by trust beneficiaries to enforce payment from the trust"); 28 U.S.C. § 1331. In addition, the parties are domiciled in different states and the plaintiffs are seeking damages in excess of $75,000. This creates diversity jurisdiction. 28 U.S.C. § 1332(a).

During February, the Court granted the parties' joint request for the creation of a trust account in a bank. The defendants have been depositing the proceeds of the disputed sales into the trust account.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

According to the defendants, the trust account contains at least $869,042.78. The plaintiffs move for partial summary judgment. In essence, they ask the Court to rule that ownership of the money in the trust account referred to above is governed by PACA and that they are entitled to the money in the account.

**RULING**

PACA "requires licensed dealers to hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers[.]" *American Banana v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 37 (2d Cir.2004) (citing 7 U.S.C. § 499e(c)(2)). However, a seller may waive PACA protection. *See, e.g., id.* at 47 ("where, as here, a seller agrees -- orally or in writing -- to a payment period exceeding thirty days, it forfeits trust protection"); *Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1, 5 (1st Cir.1999) ("Any agreement extending the payment period beyond thirty days generally constitutes a waiver of rights under the PACA trust."). WashEx allegedly executed a PACA waiver during December of 2005 and that USEx allegedly executed a PACA waiver during August of 2006. Thus, in order to qualify for summary judgment, the plaintiffs must demonstrate that the waivers ended, and PACA protection resumed, before they made the sales that are the subject of

this action.[1]

Summary judgment is proper only if the plaintiffs can demonstrate that "there is no genuine issue as to any material fact and . . . [that they are] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether the plaintiffs are entitled to summary judgment depends, in part, upon the meaning of the provisions of at least two contracts. "[I]nterpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 120 Wn.2d 573, 582 (1993) (citing *Berg v. Hudesman*, 115 Wash.2d 657, 668, 801 P.2d 222 (1990)). "'[S]ummary judgment is not proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has two or more reasonable but competing meanings.'" *Go2Net, Inc. v. CI Host, Inc.*, 115 Wn. App. 73, 83, 60 P.3d 1245 (2003) (quoting *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 10, 937 P.2d 1143 (1997)).

---

[1] In a diversity case, a federal court applies state rules of contract interpretation because they are substantive rather than procedural in nature. *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir.1993). This case is both a diversity case and a federal question case. For now, the Court assumes that state law governs the interpretation of the terms of the alleged PACA waivers and the Rescission Agreement.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

### A. USEx Waiver

During August of 2006, YITC asked USEx to waive its PACA rights. At Mr. Winkler's request, Mr. Lublin signed a letter containing a single sentence. "Effective today, August 25, 2006 all future sales made to Yarto International from US Export Company LLC. will be based on 35 day sales terms." The plaintiffs concede that, by extending the payment period beyond 30 days, Mr. Lublin waived USEx's PACA rights vis-a-vis YITC. *See, e.g., American Banana*, 362 F.3d at 37.

Although the USEx waiver contains no limiting language, the plaintiffs insist that Mr. Winkler understood it would expire 20 days after its August 25th issuance. As support for this contention, the plaintiffs cite numerous email messages between Messrs. Winkler, Munguia and Lublin. For example, Mr. Winkler emailed Mr. Munguia on August 24th:

> To appease Wells for the next 20 days please print the attached letter on US Export Letter head [sic], sign it and email it back to me.

Presumably, the name "Wells" refers to Wells Fargo. The "attached letter" is the USEx waiver. Since Mr. Winkler wanted the waiver in order to "appease" Wells Fargo for 20 days, it follows, say the plaintiffs, that he understood the waiver would expire 20 days after its issuance. The twentieth day after August 25th was September 14th. On September 20th, Mr. Lublin emailed a request for money to Mr.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

Winkler which states in part:

> I need dough on the cash sales.  I have shippers holding up crossing documents.

Mr. Winkler responded less than one hour later.  The first sentence of his response states:

> I'll get it today.

Two days later (*i.e.*, September 22nd), Mr. Lublin emailed another request for money to Mr. Winkler:

> Stevie, don't kill me on us export.  Get me money 20k a day please
>
> I will never be able to sell again or buy if I burn the suppliers again, you committed to 30 days with me, don't forget

The reference to "30 days" is potentially significant.  As explained above, a payment period of 30 days or less means that a sale may qualify for PACA protection.  To this message, Mr. Winkler emailed a one-word reply:

> ok

According to the plaintiffs, Mr. Winkler would not have responded as he did if he thought the PACA waiver was still in effect.

 The messages quoted above are representative of the extrinsic evidence that the plaintiffs have offered in support of their interpretation of USEx's PACA waiver.  The plaintiffs' reliance upon extrinsic evidence raises three issues.  One is whether the evidence

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

is admissible.  *See Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695, 974 P.2d 836 (1999).  A second issue is whether the defendants are entitled to conduct additional discovery before the Court rules upon the defendants' motion for partial summary judgment.  Fed.R.Civ.P. 56(f).  A third issue is whether only "one reasonable inference can be drawn from the extrinsic evidence."  *Go2Net, Inc.*, 115 Wn. App. at 85 (internal punctuation and citation omitted).

Mr. Lublin wrote that effective August 25th, "all future sales" would be based upon a payment period of 35 days.  Extrinsic evidence is admissible if it illuminates what the parties intended by the phrase "all future sales," but not if it contradicts what Mr. Lublin actually wrote.  *See, e.g., Hollis*, 137 Wn.2d at 696-97 (trial court properly refused to consider affidavits that contradicted the language of a plat).  To date, neither party has discussed whether the plaintiffs' extrinsic evidence contradicts the terms of the WashEx PACA waiver.  Consequently, the Court will reserve ruling upon its admissibility.

Even if the plaintiffs' proposed extrinsic evidence is admissible, summary judgment is premature.  Mr. Winkler alleges that he participated in a conference call with Messrs. Munguia and Lublin on the 23rd or 24th of August of 2006.  He says that, during the call, they agreed to waive USEx's PACA rights.  The defendants have not

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

taken the deposition of either man.  Their depositions could reveal relevant evidence.  As a result, the Court will give the defendants a reasonable opportunity to conduct discovery before the Court addresses the plaintiffs' contention that the USEx waiver was limited to 20 days.  Fed.R.Civ.P. 56(f).[2]

B. WashEx Waiver

On December 12, 2005, Mr. Lublin signed a PACA waiver on behalf of WashEx.[3]  The waiver contains a cancellation clause:

> [C]ancellation of this agreement shall be effective 30 days after receipt by the non-cancelling party and Wells Fargo Business Credit ("WFBC") of written notice of the other party's cancellation[.]

(Letter of December 12, 2006, at 1.)  The plaintiffs acknowledge that they did not cancel the waiver in the manner provided by the letter.  Nevertheless, they argue that the waiver was terminated by either of two writings.

*1. Letter of July 31st*

One writing upon which the plaintiffs rely to prove termination of the WashEx waiver is Mr. Lublin's and Mr. Munguia's letter of July 31, 2006.  It is true, as the plaintiffs point out, that Messrs.

---

[2] Given the Court's resolution of the first two issues, the Court reserves ruling with respect to the third.

[3] The plaintiffs seem to concede that Mr. Lublin was authorized to bind a limited liability company of which he was no longer a member.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

Lublin and Munguia referred to the WashEx waiver in that letter. However, they did not cancel it. Instead, they demanded that YITC pay WashEx's suppliers in a timely manner, particularly those who had waited more than 30 days for payment.

*2. Rescission Agreement*

By the Fall of 2006, the relationship between YITC and Messrs. Munguia and Lublin had become badly strained. During October, they attempted to resolve a number of disputes by means of the Rescission Agreement, the Settlement Agreement, and the Promissory Note. One of the Rescission Agreement's purposes was to enable Messrs. Lublin and Munguia to "resume sole ownership" of WashEx and to "completely disassociate themselves" from YIG and YITC. (Rescission Agreement, Recital "H," at 1.[4])  Another of its purposes was to enable the

---

  The defendants allege that the Rescission Agreement is void or voidable because of fraud and coercion. It is unclear whether they are correct. *Cf. Chadwick v. Northwest Airlines, Inc.*, 33 Wn. App. 297, 303, 654 P.2d 1215 (1982) (a release is deemed voluntary if the releasing party signed of his own free will, knowing that he was signing the agreement); *Pleuss v. City of Seattle*, 8 Wn. App. 133, 137, 504 P.2d 1191 (1972) ("a mere threat to exercise a legal right made in good faith is neither duress nor coercion in law"). At this juncture, the Court expresses no opinion with respect to whether the Rescission Agreement is void or voidable. However, in an effort to provide guidance to the parties, the Court will address the plaintiffs' contention that the Rescission Agreement terminated the WashEx PACA waiver. Obviously, this ruling is contingent upon the validity of the Rescission Agreement.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

parties to "determine, once and for all, how the obligations owed to each other, third party suppliers and other shippers and vendors are to be resolved[.]" *Id.* In partial fulfillment of these purposes, the parties exchanged mutual releases. (Rescission Agreement, ¶4, at 3-4.) Among other things, YIG and YITC relinquished any "rights" that they may have had with respect to WashEx, whether based upon "contract" or "statute," except "rights" created by the October 2006 agreement itself. *Id.* at 4 (second of two subparagraphs). The defendants note that the Rescission Agreement says nothing about the WashEx waiver. According to the defendants, the Rescission Agreement "was meant to address the separation of WashEx from YIG and did not address the ongoing business relationship between the parties." This argument is unpersuasive. A release is a contract whose interpretation is governed by traditional principles of contract interpretation. *See Del Rosario v. Del Rosario*, 152 Wn.2d 375, 382, 97 P.3d 11 (2004) ("personal injury releases are contracts"); *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 187, 840 P.2d 851 (1992) (same); *Riley Pleas, Inc. v. State*, 88 Wn.2d 933, 937, 568 P.2d 780 (1977) ("compromise or settlement agreement is a contract"). The express purpose of the Rescission Agreement was to sever an increasingly antagonistic relationship. The release contained in paragraph 4 terminated any "rights" YITC had with respect to WashEx.

Absent extrinsic evidence that the term "rights" did not include the WashEx PACA waiver (and the defendants have presented no evidence to that effect), a reasonable jury would have no choice but to conclude that the Rescission Agreement terminated the WashEx PACA waiver effective October of 2006.

**IT IS HEREBY ORDERED:**

The plaintiffs' motion for partial summary judgment (**Ct. Rec. 50**) is denied as premature with leave to re-file after the parties have had a reasonable opportunity to conduct discovery.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___30th___ day of August, 2007.

                            s/ Fred Van Sickle
                               Fred Van Sickle
                          United States District Judge